Next case on the call the docket is agenda number six case number one one two eight one seven people versus Hughes. Counsel for the appellant please proceed. Good morning, excuse me, good morning your honors. May please accord Darren Miller on behalf of the appellant Jackie Hughes. Your honors on September 26 2006 Mr. Hughes pled guilty to a charge of aggravated criminal sexual abuse that had been dismissed about six years prior to that and the plea was pursuant to an agreement with the state whereby the state was no longer pursued the sexually dangerous person's petition that he was being civilly detained on and where they had agreed that he would get credit time served on the criminal case. So essentially the agreement was that Mr. Hughes would be released both civilly and criminally pursuant to the plea. So he pleads guilty without being told of the possibility that a sexually violent person's petition could be filed based on that plea. The state in fact files a sexually violent person's petition and the very next day Mr. Hughes moves to vacate his plea. So our argument on appeal is essentially that Mr. Hughes's conviction should be reversed for two reasons. First as it turns out he pled guilty to a non-existent offense and second that his plea was not voluntary. Regarding the non-existent charge what happened was your honors there were originally a ten count indictment. Five of the charges were used as a basis for the SDP or the sexually dangerous person's petition and the other five were now pressed. After the defendant was adjudicated a sexually dangerous person they administratively dismissed the five charges. What does that mean? What does administratively dismissed mean? I'm not sure. I just know under the sexually dangerous person statute you cannot prosecute criminally after you find sexually dangerous. I'm assuming what the court had in mind was that there was nothing longer to pursue him on. So it's its own term of art. Yeah I guess. I don't know if it really has any relevance. But the point being that when they came into court for the guilty plea they moved to vacate that administrative dismissal order and not the NALPRAS order. So the NALPRAS order was never vacated and under any theory even under the state's newly argued continuous jurisdiction theory you have to have vacated that administrative, you have to have vacated the NALPRAS order in order to NALPRAS a charge. That's a formal dismissal. You cannot orally move to reinstate it. You'd have to go through the formal process of filing a new charge and have the defendant waive a preliminary hearing. So the appellate court was with us up until this point and the appellate court said well yeah that's all true but there's a revestment. I think that the revestment doctrine does not apply for several reasons. First, you can even review the state's brief and look at their own definition. Just interrupt this one a minute. What is your appellate court claim? Was it the ineffective assistance of counsel or was it that the trial court failed to admonish? For which I'm a little bit confused. I don't understand the basis of your appellate court claim. Was it based upon the ineffective assistance of counsel or was it based upon the failure to admonish? The court's failure to admonish. Regarding the NALPRAS order? Yes. What we claimed in the appellate court what the defendant claimed? Yes. Yeah, that the voluntary. Are you moving on to the other issue? I'm a little bit confused. Okay, I'm sorry. But anyway, for the revestment argument, if you even look at how the state defines it, litigants may revest a trial court with personal and subject matter jurisdiction after the 30-day period following final judgment if they actively participate in proceedings that are inconsistent with the merits. Well, in its own brief, the state argues that a NALPRAS order is an interlocutory and it's not a final judgment. So by the own definition of revestment, which requires a final judgment, revestment does not apply because a NALPRAS order is not a final judgment. And also, there are no merits to a NALPRAS order. That's just an exercise of the state's discretion. It's not a judgment on the merits. And if you look at all the, at least everything that I found, and I've seen nothing to the contrary, all the cases that involve revestment are all existing cases with final judgments. And typically, what they are, when a defense attorney files an untimely motion for new trial or motion to vacate the plea, maybe a few days late, there's a theory that jurisdiction revests if the parties actively participate. Well, that's a final judgment in an existing case. The revestment doctrine's never been... The state says the final judgment, I think, or the January 2001 order was not final. Is that correct? And that the all remaining, the actual date of September 2006 order is the final order. I'm sorry. The January 2001's the administrative dismissal order, correct? But the state contends the September 2006 order was the final order, was it? That's when he pled guilty. Yeah. And that's the final order, that date? Yeah. May I ask another question? Just be clear on what your argument is on this issue. Sure. Are you making a claim that the defendant's due process rights were violated when he pled guilty to a charge that had been nalliprost and not reinstated in the sense that there was no notice and that kind of thing? Or are you making a distinct argument? It's a distinct argument. It's a distinct jurisdictional argument that the court essentially lacked the power to even accept the plea due to this error. So what you're relying on is jurisdiction, not due process? Right. Yeah. It's strictly a jurisdictional argument. And if you look at the state's argument, now they're arguing, apparently they're almost abandoning the revestment. They didn't really argue it much in their brief. And they're saying, well, there's continuous jurisdiction. The court always had the ability and it relied on a 1946 case, I believe, in Watson where they reinstated a nalliprost. But there's a couple of things about that. First, I believe the law has changed since then because now I think the law is clear that a nalliprost is a formal dismissal that requires the filing of a new charge as opposed to the SOL procedure that apparently is filed in Cook County where it's not final and they can just move to reinstate. And the difference is for nalliprost, the speedy trial clack no longer runs whereas the speedy trial clack continues to run for the SOL. So I think Watson, first of all, is based on law that's no longer being filed. But secondly, even if you want to file Watson, it talked about that the court has this ability to reinstate a charge within the term. And we no longer go by terms. But they put a limit on it and they said had this occurred outside the term, there would have been a lack of jurisdiction. Well, 30 days had long passed and even Watson put a time limit on this. This is years and years later where the state, where this nalliprost order was being reinstated. I'm sorry, where the charge is being reinstated. Is it your position that the even revestment would need a vacature of the nalliprost order? For revestment? Yeah. I think you were starting to go into why revestment can't be used in this situation. Yeah. I mean, for revestment, you'd have to have something before the court at a minimum. That's our position. And like I argued earlier, that you'd need a final judgment. You'd need a judgment or ruling on the merits. And none of that's here for revestment. And beyond the fact that the judge accepted a plea to a non-existent charge, our argument is that my client's due process rights were violated because a plea is involuntary. And when you look at what happened here, it's frankly kind of offensive that he wasn't allowed out of this plea. The evidence is that Mr. Hughes was acting with the sole, with belief that he would be getting released, both civilly and criminally, pursuant to the plea. And instead what happens is the state took the very plea where he was expecting to be released, and that was the benefit of his bargain, and used that as a basis to again civilly commit him. And he had every reasonable right to believe this, because at the time of the plea, they had a psychiatric report saying that he was no longer a sexually dangerous person. How is that a violation of his due process rights? I think the question that Justice Freeman asked earlier was what analysis should we apply? You're telling us this is not ineffective assistance of counsel? You're suggesting that this is an obligation to the court to admonish him? Well, I'd say that it's an involuntary plea. It renders the plea involuntary. Once the state did not fulfill its promise, which was essentially to release him, that rendered the plea involuntary. The essential agreement here was the defendant was the reason, the only reason he'd be pleading guilty to a dead charge at that point was because he's being released on the SDP petition, and it was just to simply wrap up all the matters and get released from custody. And he actually testified that he would not have pled guilty had he known of this civil consequence. It would be interesting to think about in this case if there wasn't an SDP finding and the state had come in on a mandamus to vacate the plea because it was based on a nonexistent charge, what position the defendant would have then? That it was based on a nonexistent charge. Same position you have, right? Yeah. That the guilty plea can't stand because it's based on a nonexistent charge. I mean, the defendant in this particular case would have been fine with the deal but for the SDP finding, right? Well, yeah. I mean, obviously the jurisdictional arguments. You're not going to tell me how the defendant would respond to that. Well, no. A jurisdictional argument is not an equitable argument. So, yeah. I mean, I'd assume that they'd say, well, yeah, but that would offend his due process. That would be my guess what the response would be. But it's the state's job to properly charge and to ensure that there's jurisdiction. You're not suggesting, though, that the state knew at the time that they entered this agreement with your client that they, in fact, intended to file an SVP after he pled? No. There's no evidence of that. But what there is evidence of is once the defendant came back and said, gee, this goes right at the heart of our agreement. You filed an SVP. I thought I was getting out of here. They decided to stick him to the plea, to stick with the plea and to argue to keep him in the plea. So, at that point, I do believe that the state became culpable. And regardless of their intent, the matter of the fact was, is that it's just a not a voluntary plea because he didn't get what he bargained for. So, something that happens afterwards can render the plea involuntary? Yeah. I mean, I think because what happened was that he was, what happened after the fact was that basically the state did not fulfill its promise. And that's what, there is law out there that says unfulfilled promise renders a plea involuntary. So, yes. Counsel, was there any discussion that the state would never file an SVP? No. In fact, that's part of the problem. There was no discussion of an SVP at all. There's no indication the defendant even knew that an SVP exists. Well, excuse me. That's my question. If there was no discussion whatsoever, does that help or hurt you? Well, I think it helps. Because when the defendant pled guilty, he was under the impression he was going to be released civilly and criminally. And, in fact, that's the unrebutted evidence. The state put on no evidence at the hearing on the motion to vacate the plea. So the fact that he wasn't told about, if he had been told of that possibility, then I don't think we'd be here. If they had this plea in place and they said, oh, by the way, the state could, in theory, file an SVP petition. You're going to be evaluated before you're released. That's required. And based on that evaluation, they could file an SVP petition. Had he been told that, then the plea would be voluntary. There was an evaluation completed to support the SVP. Is that correct? I'm not sure that the record shows that, but I sure would hope so. Well, let me ask you this to make sure I understand this. The basis for the SVP, the sexually violent person petition, that requires an evaluation? It should. Yes. By statute, it should. But you said they used the plea, but they didn't use just the plea. They used the plea and an evaluation as the basis for this SVP. Well, an SVP cannot occur unless there is a finding of guilt on a criminal charge. So it would have been impossible to file an SVP petition without the plea. I'm just trying to make sure. It's not the plea alone. It's the plea and the evaluation. Sure. I would assume that there was some type of an evaluation done, which conflicted with the prior evaluation, which was found to be not sexually dangerous, and presumably he was thereafter evaluated and found to be sexually dangerous. But you don't know, or it's not in the record, when that evaluation was completed for the timing sequence of what happened when? Well, I know that I believe it would, if I recall correctly, and if my notes are correct, I think. Let me check here. My notes reflect that he was examined and an SVP petition was filed on the 10th, and then on October 10, 2006, on the 11th, he filed a motion to vacate the plea. I'm not sure. The evaluation would have occurred sometime, but it would have had to have occurred sometime between the plea on September 26, 2006 and October 10, 2006. Thank you. So then when you look at the cases such as Padilla and the foreign case of Bellamy, they're starting to emphasize that you just don't look at whether things are collateral consequences. And when you look particularly here, the collateral consequences worked into the plea, and I think that's crucial to understand. And I kind of did an example of, say, a defendant pled guilty to driving under the influence, and the state promised him that you will not lose your driver's license. He says, okay, well, it's important to me. He pleads guilty, goes to the Secretary of State, and they refuse to give him his driver's license. Well, that's a crucial element. That induced him to plead guilty. Even though that would be a collateral matter traditionally, when you work it into the plea, it becomes critical to the voluntariness of the plea. And that's exactly what you have here. So for these reasons, Your Honor, I'd ask that the defendant's plea be vacated. Thank you. Thank you, Mr. Miller. Counsel for the appellee. May it please the Court, I'm Assistant Attorney General Erin O'Connell on behalf of the people. I'd like to address in turn defendant's two arguments, the first being that his judgment of conviction is void, the second that his plea was involuntary. On the issue of jurisdiction, I'd like to make clear that the state did not actually forfeit the argument that it's making here that the trial court had a continuing jurisdiction as a result of the charges that were not dismissed. In the appellate court, we did not raise that argument. However, we also did not concede that jurisdiction had been lost. So it's not the case that we are now taking two contrary, contradictory positions. We're simply adding another argument, and an appellee may rely on any grounds in the record to argue for affirmance. Now, we've made the continuing jurisdiction argument because under People v. Watson, a trial court that has jurisdiction otherwise over a criminal case has the authority to reinstate a charge that has been nulliprost, presuming that both parties agree to that. So that ---- Counsel, can you explain to us what the law was back in the day in 1946? What are they talking about term? There are all sorts of words in this opinion that I don't understand. Your Honor, I'm not entirely sure either. I do know that there was a set period over which a court would retain jurisdiction, and the term was, I think, as defense counsel has argued, was I think a three-month period. However, the principles that it announces are nevertheless applicable, even though we don't rely on that sort of term structure here. But the discussion is about jurisdiction within the term. And since we no longer use the expression term, how is this case helpful to us today under our current constitution? Well, it stands for the principle that as long as a trial court already has jurisdiction, in Watson it was because it was during the same term. Here it's a different theory. The reason that the trial court had jurisdiction is that there were still five pending counts against the defendant. Then can I ask you that? I don't understand ---- This is another term I don't understand. What does administrative dismissal mean? You're saying they were currently pending. You've heard the word SOL. We've heard the word nulli. What does administrative dismissal mean, and why does that mean they're still currently pending? That is, as Your Honor notes, a term of art that was used by the trial court, and it actually stems from an error that occurred. Under the SDP Act, an SDP petition is filed under the same case number as the criminal charges. Here they opened up a new case, and that meant that while the SDP was pending, the trial court didn't want to keep this on the call. So the court entered this order administratively dismissing, even though there's no provision that allows for that type of a dismissal. It seems to just be the result that the court was viewing these as interrelated and that it viewed the criminal charges as not really being before it while the State was proceeding on the SDP petition. But after the jury entered its finding that the defendant was an SDP, the defendant successfully had the appellate court vacate that order. So it was no longer the case that the criminal charges were properly viewed as dismissed, because the State at that point had two options. It could either go back and proceed on the SDP, or it could come back into the criminal case and it could proceed to trial on the charges that had been administratively dismissed, but because they were back before the court were no longer dismissed in that fashion. How could the case, if the case was closed in the criminal matter, how could the State go back in that case if it was, what was the time frame? Well, the basis for the dismissal, I believe, was the SDP finding. And so the dismissal was effective while that was in place. However, the State and the defendant agreed that they would proceed in the criminal matter instead of the SDP matter under the different case number. And so simply by appearing, everybody agreed that this was this administrative dismissal would be vacated and that the State would proceed in the criminal matter. But just because the State and the defendant agreed, does that mean the court could hear the matter if it still had jurisdiction? Yes. I don't think the administrative dismissal should affect the jurisdictional analysis at all. As I mentioned, it's not provided for. The basis for the court's jurisdiction was the indictment here. And the indictment was, as a matter from the State's perspective, still pending in that it could be resuscitated by the defendant. By agreement? By agreement, yes. And depending on the SDP matter. I mean, if the State had prevailed on the SDP and the defendant had come in and obtained a discharge of that, the State could not have come back into the criminal matter and proceeded. So it was a dismissal that was at that point contingent on this other proceeding. And it's really unfortunate, I believe, that these were not all in the same case. Because if it had been properly filed, then it would have been clear that the jurisdiction was continuing over both the criminal charges and the SDP. So now it's not clear that there's jurisdiction. Well, the jurisdiction, it's clear that there was jurisdiction because of the indictment.  jurisdiction to then resuscitate the charges that had never been properly dismissed under the rules, pursuant to any sort of a nulla prosecuit. Ms. O'Connell, the cases that you cite seem to say the State could either refile the complaint or move to vacate the nulli pros, have the original charge reinstated, and then proceed on the original charge. And are you arguing by analogy that's what happened here? Because the State didn't exactly do any of those things, right? I think that was implicit in the trial court's order, that it was necessarily implicitly vacating the prior dismissal order of Count 6, because otherwise it could not have entered a judgment on Count 6. But there is no separate written document in which the court issues that type of order. It just needs to be inferred from the circumstances. Can we infer jurisdiction? Could we talk about reinvestment a bit? That seems to be another argument that you raised. And it has been pointed out that there has been a great deal of uncertainty in the appellate court as to the current status of the reinvestment doctrine after the case of People v. Flowers. Can you give us some ideas about what you think were the laws today in terms of the reinvestment doctrine, in terms of jurisdiction? I actually – so there is doubt that the parties can reinvest following an entry of final judgment and an untimely post-trial motion. I was not aware of that being subject to question. I mean, this Court has certainly not held that the reinvestment doctrine does not apply in those circumstances. How about Flowers, People v. Flowers? Isn't that exactly what the Court did here? This Court saying that if, you know, the time had passed, 30 days had passed, a late motion to whatever it was, vacate or rehearing, something like that. It was over 30 days, and the parties participated in the motion, and this Court said that there was no jurisdiction, even though both the parties participated past the time of 30 days where the trial court no longer had jurisdiction, that the parties' voluntary participation in the case did not – they did not consent to the reinvestment of subject matter jurisdiction. Well, unfortunately, I'm not entirely versed in the facts of that case. I know that there are circumstances under which jurisdiction cannot revest. For example, if there has been a notice of appeal, and jurisdiction had vested in the appellate court, then the reinvestment doctrine cannot revest a trial court with jurisdiction. But I'll certainly respond to Your Honor's question following argument. Justice Thomas raised a great point, which is that if this is a jurisdictional issue and the judgment is void, then either party could come in and say, we're not satisfied with the plea deal, but we're going to rely on this technicality to void it. So it just happens to be the case here that it's defendant that wants to get out from under the plea agreement, but it could, in the next case, if this court were to find that it's void, in the next case it could be the prosecutor that, on further reflection, changes his mind as to what was an appropriate sentence, and then could determine that this was, you know, this was void as a result of this – whatever the theory is here, that it's void because there was no express written order reinstating the charge, as I believe the theory, as it ultimately comes out. Then the prosecutor, as has been noted, there's no – it's not an equitable argument. The defendant couldn't argue, well, that's unfair. I entered this agreement, and, you know, I want the benefit of my bargain. It would be void, and the trial court would have jurisdiction to act, and either party could come in and seek to have it vacated. I'd like to address briefly this fairly confusing procedure that's utilized in the circuit court of Cook County. This is the – as we've discussed, there's a nulli prosecchi, and then there's also a dismissal with leave to reinstate. Now, it's been repeatedly criticized by appellate courts outside of the First District, this procedure as being not provided for by rule. Nevertheless, Cook County apparently continues to use this procedure, and the case law has developed that recognizes that this is somewhat distinct from a nulli prosecchi. Specifically, the court has held that if a prosecutor chooses to utilize this procedure and call it a dismissal with leave to reinstate, the Speedy Trial Act will continue to run because the defendant remains patently at risk of being recharged if the prosecutor comes back in. Now, I have seen no evidence that this has ever been used outside of Cook County, and the remaining counties use this nulli prosecchi, and therefore this case law that has developed shouldn't affect what are more general principles applicable across the state. When a state moves to nulli prosecchi, it is in fact seeking a dismissal that, under almost all circumstances, the state will be able to come back in if it decides to recharge the defendant. And to be clear, the argument here is not that the state can just, whenever the state wants to, come in and, over a defendant's objection, reinstate any charge that has been nulli prosecchi in the past. The narrow ground that the people are arguing here is that this is proper when the defendant agrees to this procedure. In effect, the defendant is agreeing to waive his right to have a preliminary hearing on a new charge or a new grand jury indictment when the defendant comes in and expressly asks the court to reinstate a previously dismissed charge. It's defendant's agreement here that is critical to finding that the trial court acted properly, both in reinstating the charge as a result of its continuing jurisdiction, or alternatively as a result of the revestment doctrine, because there, too, it was the defendant's own participation in the proceedings and his own affirmative act in asking the court to enter a judgment of guilty on Count 6 that conferred the necessary jurisdiction on the trial court. I'd like to move on, if the Court has no further questions about the voidness argument, to address his argument that his plea was not voluntary. Now, his argument with respect to his plea has been fairly confusing throughout the proceedings. The appellate court viewed his argument as one that the trial court erred in failing to admonish him. That was the issue that the appellate court addressed. The appellate court found that, no, the trial court did not err. The appellate court did not reach the issue of ineffective assistance of counsel because it's not very explicit the way he phrases his claim. The people gave him the benefit of the doubt and addressed this as a possible ineffective assistance argument, but it's fair to note that this was not an issue that he really pressed before the appellate court and that that court actually decided. And furthermore, the defendant tries to join all these issues together. There is a separate doctrine that says that a defendant is entitled to the benefit of his bargain. That's one basis for finding a plea to be invalid. That's not relevant to the second portion of the analysis, which is whether the plea was involuntary. Defendant is raising all these claims. He's incorrect that he did not receive the benefit of the bargain to begin with because it's clear from the record at the change of plea hearing that nobody was guaranteeing to this defendant that he would be released immediately upon being taken into custody by IDOC. The case law is clear. The benefit of the bargain theory is based on contract principles, and as a result, the courts have reasoned that it's an objective view of what the parties reasonably expected. It's not a subjective view of the defendant that's not relevant to this sort of contract-based argument. And he cannot show that he had any expectation that the State would not file an SBP petition because as his own counsel testified, that was never an issue discussed at all with the prosecutor in this case. The parties were focused on the cases that were pending at the time, of which there were two. There was the criminal charges and the SDP petition. Therefore, that portion of his argument should be rejected. He received the benefit of his bargain. Now, on the voluntariness issue, although defendant tries to frame this as, well, somebody needed to tell me about the SBP petition, the court in deciding this case should absolutely make clear whether that obligation was something borne by the trial court or something borne by defense counsel. The trial court admonishments issue, the appellate court properly held that this is a collateral consequence, and a trial court does not have an obligation to advise regarding a collateral consequence. That's long been this court's analysis in terms of the voluntariness based on court admonishments. So the court should reject that it was somehow rendered involuntary by some action or omission of the trial court. The better analysis, if anybody had the obligation to advise of a collateral consequence, it would have been defense counsel. However, for a defendant to prevail on this theory, it's the typical Strickland analysis. The court must consider both whether he's demonstrated deficient performance and whether he's demonstrated prejudice. The prejudice argument here, I think, is fairly straightforward. The defendant's only support for his prejudice argument is his statement at the change of plea hearing that he would have rejected the plea deal. Now, this is a statement that any defendant at a change of plea hearing will make. And Padilla makes clear that the court is not obligated to simply accept this at face value. The court must assess whether this is actually credible, and in doing so, it needs to look at the circumstances that were confronting defendant at the time and determine whether it would have been rational under those circumstances for the defendant to have rejected the deal. And although this court, although it preceded Padilla, which contained this statement, the court has previously done that in its own consideration in People v. Manning, a 2008 case, where in that case also the defendant testified that had counsel advised him differently regarding the possibility of a GBMI plea, then he would have rejected the plea that was offered him and proceeded that way. The court didn't just say, oh, well, he said so, so he proves prejudice. The court considered whether that was actually credible in light of what benefits he would have received had he been advised as he claims he should have been. The court in that case found that there was no prejudice and rejected it on that ground. Here the court needs to consider what was in front of the defendant at the time he was offered this extremely generous deal. The defendant, on the one hand, faced the possibility of the SDP petition, which is like the SVP, but is actually different in certain significant ways for defendants in that the SVP Act requires ongoing evaluations and continuous reconsideration, whereas the SDP Act does not provide for these periodic re-evaluations and solely places the burden on the defendant to come into court and try to obtain a discharge. So he was confronted with the possibility of this SDP finding and no continuing evaluations, or he was facing five charges that, we all admit, nobody had ever dismissed via nulla prosecco. These were charges that the state could easily have proceeded to trial on. The court had already ruled that the victim's hearsay testimony would be admissible, and defense counsel even testified at the change of plea hearing that that was a factor that he considered in advising his client to accept the plea, that the state's case was strengthened by the fact that the hearsay testimony would come in. If you add it all up in a worst-case scenario, he was facing over 100 years possible in prison. He was offered a deal where he would only be convicted of one charge. He would get 14 years, and he would get day-for-day credit, and based on the way that this was set up, it was such that he was unlikely to spend really any significant time in DOC custody at all. I mean, he went into DOC, and then within two weeks his release date had been set, and under the SVP Act, as a result of that, the evaluation occurred. But it's clear that if the state had not proceeded on the SVP petition, he would have been released very quickly. So the court must consider whether it would have been rational for him to pass up this deal to either proceed to trial with all the risks that that entailed, with the possible convictions, lengthy sentences, and then ultimately, even after that, the SVP petition or the STP petition. Would that have been rational for him to proceed in that fashion? In that case, we would ask that this court affirm the appellate court and the trial court convicting the defendant. Thank you. A couple of brief points. If this is an extremely generous deal, as counsel said, why are we here? Why? The defendant wants out of it, and if the state is being so benevolent to make this deal, let us out of it. That's what we're asking for. It's not a generous deal. It could have been a generous deal if they had done what they promised, which was to let the defendant out of custody. He was no longer a sexually dangerous person. So they couldn't have proceeded on the sexually dangerous person's petition unless their argument is that they could have him found, continue to be detained as a sexually dangerous person when he's no longer sexually dangerous. They came into court. But the proceeding later was an SVP, a sexually violent person. Was it not? Are there different standards for that? Different standards in what manner? For filing it, for holding people? Yeah, well, yeah, the sexually dangerous person's petition is in lieu of the criminal prosecution, and the sexually violent person's petition is you need the criminal conviction. I mean, it's essentially a continued, before you release him back into society, you want to make sure that he's not mentally ill and dangerous. But at any rate, it would have been fair if they would have told him, yeah, you know, if you're going to take this and you're expecting to get out, but be warned that the state could, you're going to be required to be evaluated before the Department of Corrections releases you. And if they find, if they come to a contrary finding, the state could file a civil petition under the Sexually Violent Persons Act, and you could be right back in the same position that you're looking to get out of, and you could never leave. And he wasn't told that. Specifically whose duty is it, then? Is it the trial courts, is it the defense lawyer, or is it the prosecutor? Well, if you look at, I would say that it should be the court's duty. Would that be an expansion of PDEA?  I think that's the easiest way to do this. And I know that I'm sure the court's hesitant to keep expanding doctrines, but when you look at, say, the rationale of the Bellamy case from New Jersey, what they analogized it to, that this is such a dire consequence that it's worse, and civil commitment that has potentially no end in some ways is worse than the actual punishment itself. So I don't think there's any risk if you find that there is an obligation that courts should be admonishing defendants, hey, when you plead guilty, there's a possibility you're never going to get out. You could be pleading guilty for a year or whatever. There's a possibility you may never see the light of day. I think that's a pretty important fact that should be pointed out. And in the appellate court, I was asked, well, what about the loss of a defendant's driver's license? Isn't that an important right? Well, yeah, I mean, there's a spectrum. But the point is, I don't think you have to reach that, because I think the holding could essentially be limited that Padilla should be expanded just to SVP situations where the consequence is this dire, and essentially more severe than the sentence itself, arguably. Back quickly just on the revestment, and I believe there was a question about flowers and how all that ties in. And I'm somewhat familiar with the flowers case, and I don't think that they actually reached revestment. I think that's been part of the problem, that I don't think this court's directly addressed that yet. But to make a long story short, I guess it's still up in the air that this court hasn't decided whether revestment should even apply to guilty pleas. So you've got that, and then you've got this, where the doctrine itself, even if you read the wording of it, does not apply to a now-pass order, because a now-pass order is not a final judgment,  so I don't see how there's any way that the revestment doctrine could possibly apply to the present case. If there are no further questions, I would ask that you vacate my client's plea. Thank you. Case number 112817, People v. Hughes, is taken under advisement as agenda number 6.